IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BETTY JO DAVIS, individually
and as Executrix of the
Estate of VICTOR C. DAVIS,

    Plaintiff,

v.                                   Civil Action No. 1:10CV74
                                                    (STAMP)

CSX TRANSPORTATION, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER CONFIRMING PRONOUNCED ORDER
OF THE COURT DENYING DEFENDANT'S MOTIONS IN LIMINE
REGARDING DR. FREDERICK W. FOCHTMAN AND DR. D. SCOTT SIMONTON**

I.    Background

    The plaintiff, Betty Jo Davis, individually and as Executrix of the Estate of Victor C. Davis, instituted this action pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. ("FELA"), alleging that her late husband contracted squamous cell carcinoma of the thymus as a result of occupational exposure to creosote while employed by the defendant, CSX Transportation, Inc. ("CSX"). Victor C. Davis, the decedent, worked for CSX as a trackman and machine operator from 1975 until 2006. During this time, it is alleged that he was exposed to creosote on a daily basis. On August 16, 2006, Mr. Davis was diagnosed with thymic cancer. He died from thymic cancer on May 31, 2007 at the age of 57. The plaintiff initiated this lawsuit on May 5, 2010.

    The defendant has filed two motions in limine: (1) motion to exclude the testimony of Frederick W. Fochtman, Ph.D., or, in the alternative for Daubert hearing prior to trial; and (2) motion to

exclude the testimony of D. Scott Simonton, or, in the alternative for <u>Daubert</u> hearing prior to trial. The plaintiff filed timely responses to both of the defendant's motions in limine. CSX then filed a reply in support of its motion to exclude the testimony of Frederick W. Fochtman, Ph.D.

On December 27, 2011, the parties appeared at the Wheeling point of holding court for a pretrial conference.[1] At this hearing, the Court denied the defendant's motions in limine. This order confirms the pronounced order of the Court, and for the reasons set forth below, denies the defendant's motions in limine.

## II. <u>Applicable Law</u>

The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires the trial judge to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993). This "gatekeeping" obligation applies to all

---

[1] Counsel for the plaintiff appeared via telephone.

2

expert testimony, and not just the scientific testimony at issue in Daubert.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999).  Importantly, "rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702 advisory committee's note.

The first prong of this inquiry necessitates an examination of whether the reasoning and methodology underlying the expert's proffered opinion is reliable – that is, whether it is supported by validation adequate to render it trustworthy.  See Daubert, 509 U.S. at 590 & n.9.  As the Supreme Court explained in Daubert, the subject of an expert's testimony must be scientific knowledge, meaning that it is grounded in the methods and procedures of science and consists of more than subjective belief or unsupported speculation.  Id. at 590.

The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue.  See id. at 591-92.  Daubert delineates five factors to assist the trial court in determining whether an expert's testimony will assist the trier of fact: (1) whether the expert's technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error associated with a technique; (4) if standards control the use of a technique; and (5) if the technique is generally accepted within the scientific community. Id. at 593-94. While the Supreme Court stated that those factors are designed to assist courts, the Court also cautioned, "[t]he

inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity – and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission." Id. at 594-95.  Therefore, the trial judge's evaluation of whether expert testimony is admissible under Rule 702 is a flexible one, and the judge is given broad discretion in the determination of whether particular expert testimony is relevant and reliable.  See Oglesby v. Gen. Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999); see also Kumho Tire, 526 U.S. at 152.  However, a witness may not generally offer to the jury his opinion as to the governing law at issue in the case. Adalman v. Baker, Watts & Co., 807 F.2d 359, 366 (4th Cir. 1986) (affirming the exclusion of testimony by expert witness which included legal conclusions), disapproved on other grounds in Pinter v. Dahl, 486 U.S. 622 (1988)).

It is the role of the trial judge to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion.  See Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983).  As many courts have recognized, it is often difficult to draw the line "between proper expert evidence as to facts, the inferences to be drawn from those facts, and the opinions of the expert, on the one hand, and the testimony as to the meaning and applicability of the appropriate law, on the other hand." Adalman, 807 F.2d at 366.  Nevertheless, it is the duty of the court to "state to the jury the meaning and

applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law." Id.

Finally, it is important to recognize that, notwithstanding a trial court's "gatekeeping" function as to expert opinion, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595.

### III.   Discussion

A.   Dr. Frederick W. Fochtman

In its motion to exclude the testimony of Dr. Fochtman, CSX presents the following arguments: (1) Dr. Fochtman does not have the requisite knowledge, training, skill, or experience to testify to causation of thymic cancer; (2) Dr. Fochtman's causation theory has never been tested or subjected to the peer-review process; (3) Dr. Fochtman's methodology creates an unacceptable potential for error; (4) Dr. Fochtman's method of concluding that exposure to creosote cased the decedent's thymic cancer is not generally accepted in the toxicological, scientific, or medical communities; and (5) the probative value of Dr. Fochtman's opinions is outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.

In response, the plaintiff argues: (1) Dr. Fochtman is qualified as an expert witness under Rule 702; (2) as a board-certified toxicologist, Dr. Fochtman is qualified to testify as to causation of Mr. Davis' thymic cancer; (3) Dr. Fochtman's methodology in reaching the conclusion that prolonged and repeated exposure to creosote caused Mr. Davis to develop thymic cancer satisfied the Daubert standards; (4) the fact that Dr. Fochtman's theory was not peer-reviewed or tested does not render it inadmissible; and (5) Dr. Fochtman's testimony is far more probative than prejudicial.  In its reply, CSX again asserts that Dr. Fochtman does not possess the requisite expertise required to be qualified to render the opinion that creosote exposure can cause thymic cancer.  CSX also reiterates its argument that Dr. Fochtman's methodology fails to satisfy the factors set forth in Daubert to ensure reliability.

This Court finds that Dr. Fochtman's forensic toxicology background qualifies him to testify regarding thymic cancer causation due to exposure to creosote.  Dr. Fochtman, a board-certified toxicologist, holds a doctorate in pharmaceutical chemistry and has worked as a toxicologist in a variety of environments, including teaching forensic and environmental toxicology.  Fochtman Dep. 6:2-25, July 15, 2011.  Dr. Fochtman is also a Diplomate in the American Board of Forensic Toxicology, a Diplomate of the American Board of Toxicology, and a member of the Society of Toxicology.  Fochtman Dep. 6:8-13.  Dr. Fochtman's

curriculum vitae sets forth a long list of professional experience, special courses, workshops attended, and papers presented that reveal his extensive toxicology background and enable him capable of rending an opinion in this case.

During his analysis, Dr. Fochtman reviewed Mr. Davis' medical records, his work history as a CSX employee, and his exposure to certain carcinogenic mechanisms.  Fochtman Dep. 17-18.  Dr. Fochtman also reviewed deposition transcripts and discussed Mr. Davis' occupational exposure with his wife.  Id.  The plaintiff emphasizes that in creating his hypothesis and report in this case, Dr. Fochtman used a method and model accepted in virtually all judicial proceedings.  The conclusion reached by Dr. Fochtman – that "Mr. Davis' case produced a typical occupational exposure to those known human carcinogens that comprise the chemical amalgam referred to as creosote" – is recognized in biomedical literature. Pl.'s Mem. in Opp'n Ex. D.  Further, toxicokinetics of human coal tar creosote exposure has been previously documented in scientific literature.  Fochtman Dep. 18-19; 27-28.  Clearly, Dr. Fochtman reviewed a variety of materials in forming his opinion in this case, applying his knowledge and research to the facts.  Even though Dr. Fochtman admits that he is not necessarily an expert with regard to environmentally caused cancers, this Court finds that Dr. Fochtman has sufficient education, knowledge, experience, and training to make his testimony admissible under Rule 702. Fochtman Dep. 43:9-24; see Friendship Heights Associates v.

Vlastimil Koubek, A.I.A., 785 F.2d 1154, 1159-60 (4th Cir. 1986) (holding that the expert witness is qualified to testify by virtue of her education, knowledge, and training).

The defendant argues that Dr. Fochtman's causation theory fails to satisfy the reliability factor under Daubert because his hypothesis has never been tested and fails to satisfy the second Daubert factor because it lacks support among any peer-reviewed scientific literature. Although peer review and publication is one factor that assists the courts in determining if expert testimony is admissible,

> [p]ublication (which is but one element of peer review) is not a sine qua non of admissibility; it does not necessarily correlate with reliability, . . . and in some instances well-grounded but innovative theories will not have been published . . . . Some propositions, moreover, are too particular, too new, or of too limited interest to be published . . . . The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised.

Daubert, 509 U.S. at 593-94. Certainly, the lack of peer review will be an important factor for the jury to consider, but it is only one factor of many. Thus, Dr. Fochtman's lack of publication does not necessarily render his testimony inadmissible.

The defendant also alleges that Dr. Fochtman improperly relies on temporal proximity between the development of Mr. Davis' disease and his exposure to creosote as the basis for his opinion. According to the defendant, the mere fact that the disease occurred subsequent to exposure is insufficient to show causation. However,

the Fourth Circuit Court of Appeals has held that expert opinions "based on a reliable differential diagnosis and a strong temporal relationship between a substantial exposure . . . and the onset of [the plaintiff's] symptoms" are admissible under Rule 702. Anderson v. Quality Stores, Inc., 181 F.3d 86 (4th Cir. 1999).

As the defendant noted, an additional consideration under Rule 702 is "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving the factual dispute." Daubert, 509 U.S. at 591 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3rd Cir. 1985)). The consideration is one of "fit." In other words, will the expert testimony be helpful to the jury. This Court finds that Dr. Fochtman may provide information useful to a jury. In fact, this Court, and others, have held that toxicologists like Dr. Fochtman may testify as to causation. See Kitzmiller v. Jefferson Supply Co., No. 2:05cv22, 2006 WL 2473399 (N.D. W. Va. Aug. 25, 2006) ("[A] toxicologist . . . 'may offer expert opinions on whether exposure to [the] chemical[s] caused [Plaintiff's] injury.'"; See also Bonner v. ISP Techs., Inc., 259 F.3d 924, 928-31 (8th Cir. 2001) (allowing a toxicologist to testify that exposure to a chemical caused a person's symptoms and injuries); Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3rd Cir. 1991) (holding that the trial court's exclusion of the witness, without considering his credentials as a doctor of toxicology, simply because he did not possess a medical degree, is inconsistent with

expert witness jurisprudence). Additionally, this Court intends to give detailed instructions as to how the jury is to consider expert testimony, allowing the jury to decide what weight to give Dr. Fochtman's testimony.

B. Dr. D. Scott Simonton

In its motion to exclude the testimony of Dr. Simonton, CSX argues: (1) Dr. Simonton does not have the requisite knowledge, training, skill, or experience to testify to exposures experienced by the decedent or whether such exposures placed the decedent at a risk of developing thymic cancer nor does he offer testimony that assists the trier of fact; (2) Dr. Simonton employs no discernable methodology; and (3) the probative value of Dr. Simonton's opinions is outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.

The plaintiff counters that: (1) Dr. Simonton is a qualified expert witness under Rule 702; (2) as an environmental engineer, Dr. Simonton is qualified to testify as to the risk of exposure to creosote and its potential to cause cancer; (3) Dr. Simonton's methodology in reaching the conclusion that exposure to creosote increase Mr. Davis' risk of cancer satisfied the Daubert standards; and (4) Dr. Simonton's testimony is more probative than prejudicial.

This Court's analysis of the defendant's motion to exclude the testimony of Dr. Simonton is similar to the discussion regarding Dr. Fochtman's testimony above. Like Dr. Fochtman, this Court

10

finds that Dr. Simonton is qualified to testify based upon his environmental engineering background. Dr. Simonton has a master's degree in environmental engineering and a Ph.D. in engineering. Simonton Dep. 7:7-10, July 6, 2011. His knowledge encompasses a broad area of study including environmental policy, environmental ethics, safe transport of contaminants, and human health risk assessment. Simonton Dep. 8:8-19. He is also a member of the Environmental Qualify Board in West Virginia. Simonton Dep. 10:2-4. During his July 6, 2011 deposition, Dr. Simonton testified as to his knowledge of contaminants and the risk they pose to humans. He also explained the carcinogenic nature of creosote. Simonton Dep. 59-60. Because Dr. Simonton's expertise in environmental engineering overlaps with the field of epidemiology, he is familiar with the carcinogenic nature of chemicals. Simonton Dep. 13-14. As the plaintiff explains, Dr. Simonton is not a medical doctor, but that fact does not preclude him from testifying as an expert in environmental engineering. This Court agrees. See Genty, 937 F.2d at 917.

This Court also finds that Dr. Simonton's methodology in reaching his conclusion that exposure to creosote increased Mr. Davis' risk of cancer is sound. In reviewing Mr. Davis' death, Dr. Simonton studied deposition transcripts, CSX safety and industrial hygiene documents, and other documents from government agencies. Pl.'s Resp. in Opp'n Ex. B. Dr. Simonton's conclusion regarding the circumstances of Mr. Davis' death appears to be based

upon his education, knowledge, and training as an environmental engineer. This Court, in exercising its "gatekeeper" function to determine the admissibility of expert scientific testimony, cannot invade the province of the jury, whose job it is to decide issues of credibility and persuasiveness, and to determine the weight that should be given to the expert's opinion. San Francisco v. Wendy's Intern., Inc., 656 S.E.2d 485, 494 (W. Va. 2007). Accordingly, this Court finds that Dr. Simonton's testimony is admissible under Rule 702.

## IV. Conclusion

For the reasons stated above, the defendant's motion in limine to exclude the testimony of Frederick W. Fochtman, Ph.D., or, in the alternative for Daubert hearing prior to trial (ECF No. 70) is DENIED and the defendant's motion in limine to exclude the testimony of D. Scott Simonton, or, in the alternative for Daubert hearing prior to trial (ECF No. 75) is DENIED. Further, the defendant's request for a Daubert hearing is DENIED.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     December 30, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE